# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### TAMPA DIVISION

**In Re:**

**F. G. METALS, INC.,**
_____/

**UNITED STATES OF AMERICA,**

     **Appellant, ,**

**v.**                        **Case No.  8:08-cv-932-JSM**

**F.G. METALS, INC.,**

     **Appellee.**
_____/

## ORDER OF REMAND

THIS CAUSE is before the Court upon the appeal of the United States Government from the Order on Debtor's Amended Plan of Reorganization entered by the United States Bankruptcy Court for the Middle District of Florida on March 18, 2008.  The Bankruptcy Court confirmed the Debtor's Amended Plan of Reorganization.  This Court has jurisdiction pursuant to 28 U.S.C. § 158(a).

### Issues Presented

Appellant raises the following issues:

1.     Whether the Bankruptcy Court erred by confirming a plan that proposed to pay the IRS in small monthly payments of $6,000, followed by a large balloon payment at the end of the payment period provided by section 1129(a)(9)(C), when that provision requires "regular installment payments in cash."

2.      Whether the Bankruptcy Court erred by requiring the IRS to allocate all of the payments made by the Debtor to the IRS under the Chapter 11 Plan to the trust fund portion of Debtor's employment tax liabilities pursuant to <u>United States v. Energy Resources Co., Inc.</u>, 495 U.S. 545, 551 (1990).

3.      Whether the Bankruptcy Court erred in determining that the Chapter 11 plan of reorganization is feasible under 11 U.S.C. § 1129(a)(11).

## <u>Standard of Review</u>

The first issue concerning the monthly payments of $6,000 followed by a large balloon payment at the end of the payment period is a question of statutory interpretation of § 1129(a)(9)(C) and is, therefore, a question of law subject to *de novo* review.  The two remaining issues are questions of fact subject to the clearly erroneous standard of review.  A factual finding is clearly erroneous if "this Court, after reviewing all of the evidence, (is) left with the definite and firm conviction that a mistake has been committed."  <u>Lykes Brothers, Inc. v. U. S. Army Corps of Engr's</u>, 64 F.3d 630, 634 (11th Cir. 1995).

## <u>Discussion</u>

A.      Whether the Bankruptcy Court erred by confirming a plan that proposed to pay the IRS in small monthly payments of $6,000, followed by a large balloon payment at the end of the payment period provided by section 1129(a)(9)(C), when that provision requires "regular installment payments in cash."

In confirming the Debtor's Amended Plan of Reorganization, the Bankruptcy Court approved a proposed payment plan of the amount owed the IRS which consisted of small monthly payments of $6,000 with a large balloon payment on April 30, 2011.  The IRS argues that this provision is in violation of § 1129(a)(9) of the Bankruptcy Code, which provides in pertinent part:

(a)     The court shall confirm a plan only if all of the requirements are met:

. . . .

(9)     Except to the extent that the holder of a particular claim has agreed to a different treatment of such claim, the plan provides that --

. . . .

(C)     with respect to a claim of a kind specified in Section 507(a)(8) of this title, the holder of such claim will receive on account of such claim regular installment payments in cash --

(i)      of a total value, as of the effective date of the plan, equal to the allowed amount of such claim;

(ii)     over a period ending not later than 5 years after the order for relief under §301, 302 or 303; and

(iii)    in a manner not less favorable than the most favored nonpriority unsecured claim provided for in the plan . . .

(D)     with respect to a secured claim which would otherwise meet the description of an unsecured claim of a governmental unit under Section 507(a)(8), but for the secured status of that claim, the holder of that claim will receive on account of that claim, cash payments, in the same manner and over the same period, as prescribed in subparagraph (C).

Specifically, the IRS argues that the term "regular" in the phrase "regular installment payments in cash" requires that payments be made in uniform intervals, and equal amounts. Unfortunately, the Bankruptcy Code itself does not define what it means by "regular installment payments." Given the scant case law on this issue, both parties resort to arguing dictionary definitions of the various words included in the phrase. But if this meaning can be discerned from a plain reading of the words in context, that is required.

A plain reading of the statute indicates that "regular" is not the same as "equal." "Regular installment payments" means payment made on a recurrent basis over a period of time. Monthly payments are regular payments. There is nothing in the plain reading of the statute that would indicate that monthly payments, followed by a balloon payment, is not an appropriate payment method under the Code. If Congress wanted to say "equal payments," it could have done so. If Congress had wanted to say "no balloon payments," it could have done so.

In fact, Congress at one time did consider prohibiting balloon payments in this section. In 1999, Congress considered amending provisions of § 1129(a)(9) to have it state:

> "(A) striking "deferred cash payments over a period not exceeding six years after the date of assessment of such," and inserting "regular installment payments in cash, but in no case with a balloon provision and no more than three months apart, beginning no later than the effective date of the plan and ending on the earlier of five years after the petition date or the last date payments are to be made under the plan to unsecured creditors ...." (emphasis added)

H.R. Rep. No. 106-123, at 54 (1999). When the amendments were actually adopted, the prohibition of balloon payments was not present. This supports the conclusion that Congress did not intend to prohibit balloon payment provisions if a bankruptcy court deemed them necessary to the success of a plan of reorganization. Further, in interpreting the statute in this

manner, that "regular" does not mean "equal," the Court is interpreting the statute in a manner consistent with its interpretation prior to any amendments.[1]

> B.     Whether the Bankruptcy Court erred by requiring the IRS to allocate all of the payments made by the Debtor to the IRS under the Chapter 11 Plan to the trust fund portion of Debtor's employment tax liabilities pursuant to <u>United States v. Energy Resources Co., Inc.</u>, 495 U.S. 545, 551 (1990).

Debtor's Amended Plan of Reorganization provides that the monthly payments of $6,000 be allocated first to the trust fund portion of the tax claim with the remaining balance (more than 50%, according to the Government) to be paid at the end of three years in a balloon payment.  The tax claims, including taxes, penalties, and interest, arose because a financial employee of the Debtor falsified tax returns of the company and embezzled money.  These falsified records included payroll tax returns.

Employers are required to withhold from the pay of their employees personal income taxes and Social Security taxes.  26 U.S.C. § § 3102(a) and 3402(a).  These withheld taxes are to be set aside and held in trust for the United States.  26 U.S.C. § 7501(a).  Because they are held in trust, they are referred to as "trust fund" taxes.  According to the claim filed by the I.R.S. (claim #25-2), the I.R.S. has a secured claim of $552,795.63, a priority claim of $4,770.41, and an unsecured general claim of $8,092.33.  The record does not specify what amounts due the I.R.S. are trust fund taxes.

The officers of a corporation who are charged with the payment of the trust fund taxes are jointly liable for them.  26 U.S.C. § 6672.  The I.R.S. prefers to allocate payments to the

---

[1] In this regard, the Court adopts the analysis and reasoning of the Bankruptcy Court for the Eastern District of Michigan in <u>In Re Gregory Boat Company</u>, 144 B.R. 361 (Bankr. E.D. Mich. 1992).

non-trust fund portion of any amount due saving for last that portion for which the officers of the corporation are personally liable.  That approach maximizes the likelihood that the I.R.S. will collect the taxes owed it.  The corporate officers, on the other hand, obviously prefer that the portion for which they are individually liable be extinguished first.  From the perspective of the corporation, since it owes all of the taxes, it makes no difference which portion of the tax is paid first.

F. G. Metals, Inc. is owned 50% by George Frey, its president, and 50% by Richard Jaragoske, its secretary/treasurer.  Not surprisingly, the Amended Plan of Reorganization proposed by Mr. Frey and Mr. Jaragoske provides that the trust fund portion of the corporate liability to the I.R.S. be paid first.  This allocation proposal was approved by the Bankruptcy Court over the objection of the I.R.S.

Bankruptcy courts have the authority to modify creditor-debtor relationships including the ability to order payments be applied first to the trust fund portion of taxes owed if the bankruptcy judge finds that it is "necessary for a reorganization's success."  United States v. Energy Resources, Co., Inc., 110 S.Ct. 2139 (1990).  The Supreme Court was not specific about what facts must be present to justify such an allocation so debtors frequently seek to have the personal liability of their officers paid first.  These efforts have rarely met with success. See In Re: Visiting Nurse Association of Tampa Bay, Inc., 128 B.R. 835 (Bankr. MD Fla. 1991), U. S. v. Vokes Equipment, Inc., (In Re: Vokes Equipment Inc.), 1993 WL 246155 (SD Fla. 1993), In Re: R. L. Himes & Assoc., Inc., 152 B.R. 198 (SD Ohio 1993), and In Re: Oyster Bar of Pensacola, Inc., 201 B.R. 567 (B.R. ND Fla. 1996).  While it is not

clear what facts will support an allocation of all payments first to the trust fund portion of taxes owed, as the Bankruptcy Court in the Northern District of Florida pointed out in <u>Oyster Bar of Pensacola</u>, as part of the analysis the Court at least must consider whether "the allocation of the tax payments puts in jeopardy the government's tax claim and increases the risk the government will not be able to collect the total tax due (since the guaranteed trust fund taxes for which 'responsible persons' are also liable would be paid before the non-guaranteed non-trust fund taxes); and whether such risk is acceptable by an offsetting likelihood that the allocation would increase the possibility for successful reorganization." <u>In Re: Oyster Bar of Pensacola, Inc.</u>, 201 B.R. 567, 569.

There was little evidence at the hearing on why it was necessary to a successful reorganization (as opposed to benefitting the officers individually) for the Debtor to apply tax payments first to the trust fund amounts. Mr. Frey testified about why he and his fellow officer wanted the payments applied first to their personal liability:

> Q.   Are you aware that the Plan provides for an allocation of initial Plan payments to the trust fund?
>
> A.   Yes, I am.
>
> Q.   Is that provision important to you?
>
> A.   It's extremely important. At my age, soon to be 62, and Dick at 69, I believe that we need to resolve our personal liability to the IRS as soon as possible; that if we're forced to pay the full amount and with the continuing interest and penalties that will accrue on that, there's really not much point in continuing the business. I might as well go to work for somebody else.
>
> Q.   Could the company function without you?

A.      No.

Q.      Could it function without Mr. Jaragoske?

A.      No.

Q.      Is that Mr. Jaragoske's position as well?

A.      It is.  We've talked about it many times.

Q.      What do you believe will be the benefit to the IRS of continued operations?

A.      I believe that the IRS will be paid in full if the business is allowed to continue.

On cross-examination of Mr. Frey:

Q.      If you would please explain to me one more time why it is that if the Debtor is not permitted to pay off the trust fund portion of the claim first thereby releasing you of personal liability that you would quit because it wouldn't be worth working?  If I understood your testimony, you said that you would quit because it wouldn't be worth working for the Debtor.

A.      Regardless of the business, I'm still personally responsible for the trust fund portion.  If in making payments through - - to the IRS through F & G Metals they are first put against interest and penalties rather than the trust fund portion, I might as well close the business and just work out a payment plan for me personally and go to work someplace else rather than continue the business because the business can't support that at this time.

Q.      The business can't support what at this time?

A.      Can't support making full payment each month on the full amount of the debt.

Q.      And why is the business going to be able to pay 50 percent of the debt in a little bit over three years?

A.      As I have scheduled it, $6,000 a month, I believe that we can do that.
We have other debts that are retiring in the meantime.  BB&T will be
gone in 2011, Caterpillar Tractor at $5,300 a month will be gone in a
year from now.

Doc. 8-2, Transcript of evidentiary hearing held February 25, 2008.

To summarize, Mr. Frey testified that if the payments were applied first to the tax fund
portion of the liability, he and Mr. Jaragoske would have an incentive to stay with the
company and that the company could not function without them.  On direct, he said he
believed that the I.R.S. would be paid in full if the tax payments were first allocated to his
individual liability.  On cross, he testified that if the payments were put first against interest
and penalties rather than the trust fund portion, the business would not be able to make "full
payment each month on the full amount of the debt."  This obvious contradiction underscores
that the real purpose of this proposal is to benefit the officers, individually, not the
corporation or the success of the reorganization.

The same argument made by the Debtor here was rejected by the Bankruptcy Court
in In Re: Oyster Bar of Pensacola where the Court said:

It is not enough in and of itself simply to argue that the designation is
necessary because it will free a "responsible" party from trust fund liability
thus presumably giving that party an incentive to assist with the corporation's
recovery.   In fact, it is just as plausible an argument that without a plan
provision directing that trust fund taxes be paid first, the corporate officers
have as much or more incentive to assist in the corporation's reorganization.

In Re: Oyster Bar of Pensacola, Inc., 201 B.R. 567, 570.

This argument was also rejected in <u>Vokes Equipment</u>.  There, the Court pointed out:

> Under the proposed plan, all taxes would be paid by Vokes Equipment within six years, regardless of the order in which the liabilities were satisfied. Allocating the initial payments to the trust fund portion serves only to relieve Douglas Vokes of his (joint) liability earlier than IRS policy would ordinarily allow.  As Douglas Vokes will not be supplying the reorganized corporation with any capital - all monies will derive from future sales - relieving him of liability at an earlier stage will have no bearing upon the success of the reorganization.

<u>U. S. v. Vokes Equipment, Inc.</u>, 1993 WL 246155, 3.

Like the debtors in the foregoing cases, the Debtor here attempts to support the payments being allocated to the trust fund liability because absent that allocation, the officers would have less incentive to stay with the business.  The pitfall in accepting such an argument is that every debtor in every case can make such a claim.  And, the fallacy is that the incentive would exist only until the trust fund portion was paid in full.  Once the individual liability of the responsible individuals is satisfied, the incentive to ensure the debtor remains viable is diminished.  In fact, a pro rata application of plan payments would appear to provide maximum incentive.

The reasoning behind a pro rata application of payments was aptly described in a footnote by the Bankruptcy Court in <u>In Re: Visiting Nurses Association of Tampa Bay, Inc.</u>:

> This Court has consistently authorized a *pro rata* application of plan payments between the trust fund and nontrust fund portions of tax claims.  The Court has found such *pro rata* application enhances, if not establishes, the impetus for success of the reorganization process.  Where the responsible persons are post-petition management, they have an incentive to implement the plan and keep the debtor efficient, thus insuring payment of the entire tax claim, both trust fund and non-trust fund portions.  Where trust funds are allocated to be paid first under the plan, the IRS has just concern that post-petition management

only has an incentive until the trust fund portion of the claim is paid.  The *pro rata* application of each plan payment eliminates these concerns of the IRS.

In Re: Visiting Nurses Association of Tampa Bay, Inc., 128 B.R. 835, 837, fn.5.

In the present case, there was no finding of fact as to what amount constitutes the trust fund portion of the amounts due.  Even at oral argument, the parties could not specify the amounts of trust fund and non-trust fund taxes.  Nor could they specify the amount that would remain, if any, after the application of the monthly payments.  Such information is necessary in balancing the interests of the I.R.S. in decreasing the risk that it will go unpaid against whatever likelihood there may be that the allocation would increase the possibility for a successful reorganization.

      C.      Whether the Bankruptcy Court erred in determining that the Chapter 11 plan of reorganization is feasible under 11 U.S.C. § 1129(a)(11).

The evidence in the record is sufficient to support the Bankruptcy Court's determination that the plan of reorganization is feasible.  This finding will not be disturbed on appeal.

## Conclusion

There are insufficient facts in the record from which this Court can uphold the Bankruptcy Court's overruling of the I.R.S. objection.  This case will be remanded for further findings of fact.  In particular, findings should be made concerning what portion of the amounts due is trust fund liability, the amounts remaining due under the respective portions of the tax liability at the time of the balloon payment, what consideration has been made to

balance the respective interests of the parties, and how the allocation first to the trust fund portion provides incentive greater than that of a pro rata allocation.[2]

It is therefore ORDERED AND ADJUDGED that:

1.      This cause is hereby REMANDED to the Bankruptcy Court for further findings as specified herein.

2.      The Clerk is directed to close this file.

**DONE** and **ORDERED** in Tampa, Florida on September 4, 2008.

JAMES S. MOODY, JR.
UNITED STATES DISTRICT JUDGE

**Copies furnished to:**
Bankruptcy Judge Paul Glenn (Case #8:06-bk-2108-PMG)
Counsel/Parties of Record

F:\Docs\2008\08-cv-932.bk appeal.frm

---

[2] Of course, the Bankruptcy Court may decide to adopt a pro rata or some other allocation after receiving this additional evidence.